## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRA CHERI MORELAND a/k/a ANA CHERI; BRENDA LYNN GEIGER; CLAUDIA SAMPEDRO; IRINA VORONINA; SARA UNDERWOOD; MARIANA DAVALOS; ROSA ACOSTA; and JESSICA HINTON a/k/a JESSA HINTON, | Civil Action No.: 19-cv- |
| *Plaintiffs*, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| MALEBOX, LLC and BRIAN GOLDRICK, | |
| *Defendants*. | |

Plaintiffs ANDRA CHERI MORELAND a/k/a ANA CHERI; BRENDA LYNN GEIGER; CLAUDIA SAMPEDRO; IRINA VORONINA; ROSA ACOSTA; SARA UNDERWOOD; MARIANA DAVALOS; SARA UNDERWOOD; and JESSICA HINTON a/k/a JESSA HINTON (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants MALEBOX, LLC d/b/a SHADOW BAR & LOUNGE (collectively "Defendants") and BRIAN GOLDRICK respectfully allege as follows:

## <u>BACKGROUND</u>

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their nightclub, Shadow located in Springfield, Massachusetts ("Shadow" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      Defendant MALEBOX, LLC is a Massachusetts corporation with its principal place of business located at 382 North Main Street, East Longmeadow, Massachusetts 01028. MALEBOX, LLC operates Shadow, which is located at 234 Chestnut Street, Springfield, Massachusetts 01103.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Springfield, Massachusetts is Defendants' principal place of business.

8.     Primarily and substantially the alleged causes of action arose and accrued in Springfield, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Springfield, Massachusetts.

## PARTIES

*Plaintiffs*

9.     Plaintiff Andra Cheri Moreland a/k/a Ana Cheri ("Moreland") is a well-known professional model, and a resident of Orange County, California.

10.     Plaintiff Brenda Lynn Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

11.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Fulton County, Georgia.

15.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Jessica Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

17.     Defendant MALEBOX, LLC is a Massachusetts corporation with a principal

place of business in Springfield, Massachusetts.   During times relevant to this action,

MALEBOX, LLC operated Shadow in Springfield, Massachusetts.

18.     On information and belief, Defendant BRIAN GOLDRICK is a resident of

Massachusetts. According to publicly available records, and upon information and belief,

BRIAN GOLDRICK, in his capacity as principal, owner and/or CEO of MALEBOX, LLC

maintained operational control over Shadow, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

19.     As set forth immediately below, each Plaintiff is a well-known professional model

who earns her livelihood modeling and licensing her Images to companies, magazines and

individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their

good will and reputation, which is critical in order to maximize their earning potential, book

modeling contracts, and establish each of their individual brands.  In furtherance of establishing,

and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

21.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

one or more of the Defendants in order to make it appear that they worked at, endorsed or were

otherwise associated or affiliated with Shadow.

22.     In the case of every Plaintiff, such appearance was false.

23.     Moreover, in every case this misappropriation occurred without any Plaintiff's

knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration

for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal

use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

24.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

25.     Andra Cheri Moreland a/k/a Ana Cheri is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz, was featured as a Maxim Instagram Girl of the Week. She is also Playboy's Playmate of the Month (October 2015). Ana has 12,360,817 followers on Instagram, 230,276 followers on Twitter, and 6,279,028 followers on Facebook.

26.     That we know of, Moreland is depicted in the photo in Exhibit "A" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Moreland employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

27.     Moreland has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Brenda Lynn Geiger is a hip-hop/eye candy model and actress who appeared, with 8-time Grammy nominee rapper Lil Wayne, in singer Keri Hilton's music video "Ms. Officer". Ms. Geiger, known as the Jersey Gem, is perhaps best known for her work for Glamour and an appearance on The Howard Stern Show in a Miss HTV March contest. Ms. Geiger has been featured in numerous men's magazines such as Show, Maxim and Raw. Ms. Geiger has been

featured on numerous product campaigns, such as Primitive Clothing, where she has her own custom skateboard decks which originally sold out but are now back in production.

29. That we know of, Geiger is depicted in the photo in Exhibit "B" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Geiger employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30. Geiger has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. Claudia Sampedro is a Cuban born model, mother and spokeswoman. Ms. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Ms. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Ms. Sampedro is in a Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Ms. Sampedro is engaged to and has a baby with Green Bay's star defensive end Julius Peppers.

32. That we know of, Sampedro is depicted in the photos in Exhibit "C" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Sampedro employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33. Sampedro has never been employed at Shadow, has never been hired to endorse

Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Irina Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max (Italy), Ocean, Shape, 944, Knockout, Q (UK), People (Australia), and most recently Kandy, Rukus, Vape and Browz magazines. In 2008, Ms. Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Ms. Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. She loves connecting with her fans and stays active daily across all social media outlets for her 4+ million followers on Facebook, Instagram, Twitter and YouTube. (Facebook - 3.5 million, Instagram 700K, Twitter 162K) Ms. Voronina also got her first big screen break in "Reno 911!: The movie.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," &"Piranha 3DD," to name a few. In 2016 Ms. Voronina returns to the big screen playing supporting roles in "Laser Team" and "Killing Hasselhoff." She is starring in the indie action flick "Scramble" which she also co-produced. Ms. Voronina tours and performs nationally as a stand-up comedian. She has more than 4.5 million social media followers.

35.     That we know of, Voronina is depicted in the photo in Exhibit "D" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Voronina employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36.     Voronina has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.     Sara Underwood first appeared in Playboy in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Ms. Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many Playboy videos, and not only has appeared as herself in the films The House Bunny (2008) and Miss March (2009) but also on episodes of such reality TV series as Kendra (2009), The Girls Next Door (2005) and Bridget's Sexiest Beaches (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over fourteen million social media followers.

38.     That we know of, Underwood is depicted in the photo in Exhibit "E" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Underwood employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

39.     Underwood has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Mariana Davalos was born in the US but grew up in Colombia. Ms. Davalos has a twin sister Camilla and together started a modeling career at age 10. By the time Ms. Davalos was 18 her career was already established in Colombia as one of the most famous and successful models in all of Latin America. Ms. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Ms. Davalos is constantly listed in "The top sexiest people in the World" lists and whether solo or teamed up with her twin sister are constantly in demand. Ms. Davlos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her Instagram followers of over three hundred thousand and over a quarter of a million Facebook fans.

41.     That we know of, Davalos is depicted in the photo in Exhibit "F" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Davalos employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.     Davalos has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.     Rosa Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y

Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Rosa moves to United States in 2006 where her career takes a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, tv programs and commercials and numerous music videos. She has 33,046 Facebook followers, over 1.6 million Instagram followers, and 290,435 Twitter followers.

44.     That we know of, Acosta is depicted in the photo in Exhibit "G" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Acosta employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

45.     Acosta has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     Jessica Hinton a/k/a Jessa Hinton was first introduced to the modeling industry at age fourteen when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on Baywatch and 7th Heaven by the age of sixteen. At the age of eighteen, she began working runway shows and doing print campaigns. In 2010, Ms. Hinton became the face of the Palms Hotel & Casino's 2010 ad campaign. She then

expanded to TV personality roles having hosted for Victory Poker, and as an interview personality for the Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Ms. Hinton also gained spokes model roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World and ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images appeared on billboards, magazines, posters, and multiple forms of electronic media. Ms. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was recently named Creative Director for MAJR Media and was given part ownership for her role with the company. Ms. Hinton has also earned an elite status as a social media celebrity crossing well over the 1 million follower benchmark on Instagram, 2,871,000 followers on Facebook, and 246,098 followers on Twitter.

47.     That we know of, Hinton is depicted in the photo in Exhibit "H" to promote Shadow on its Facebook page. This Image was intentionally altered to make it appear that Hinton employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

48.     Hinton has never been employed at Shadow, has never been hired to endorse Shadow, has never been otherwise associated or affiliated with Shadow, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

- 11 -

49.     Upon information and belief, Defendants operated, during the relevant time period, Shadow, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

50.     Upon information and belief, and in furtherance of its promotion their promotion of Shadow, Defendants own, operate and control Shadow's social media accounts, including its Facebook, Twitter, and Instagram accounts.

51.     Defendants used Shadow's Facebook, Twitter, and Instagram accounts to promote Shadow, and to attract patrons thereto.

52.     Defendants did this for their own commercial and financial benefit.

53.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked employed at Shadow, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

54.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Shadow to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

55.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Shadow and at no point have any of the Plaintiffs ever endorsed Shadow, or otherwise been affiliated or associated with Shadow.

56.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and

Defendants did not compensate Plaintiffs for their use of their Images.

57.     As such, Plaintiffs have never received any benefit from Defendants' use of their

Images.

***Standard Business Practices in the Modeling Industry***

58.     It is common knowledge in the modeling industry that the hiring of a model for a

commercial purpose involves a particularized methodology and process.

59.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following

factors: a) the reputation, earning capacity, experience, and demand of that particular model; b)

the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television

commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the

"term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

60.     As detailed above, Defendants knowingly, and without the prior consent of any of

the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in

order to promote Shadow by and through various marketing and promotional mediums

including, without limitation, Shadow's website, Twitter, Facebook, and Instagram.

61.     Defendants showcased Plaintiffs' Images on Shadow's social media pages to

create the false impression that Plaintiffs worked at Shadow, endorsed, promoted or sponsored

same, or were otherwise associated or affiliated with same.

62.     Defendants did so to attract clientele to Shadow, promote Shadow, and thereby

- 13 -

generate revenue for Defendants.

63.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Shadow.

64.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

65.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

66.     This is especially so insofar as each of Plaintiffs' Images have been associated with a nightclub, and the implication of Defendants' use of Plaintiffs' Images is that they are , endorse a nightclub, or are otherwise associated or affiliated with a nightclub.

67.     At no point were any of the Plaintiffs ever affiliated with Shadow, or Defendants.

68.     Each of Plaintiffs' Images was used without her consent.

69.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

70.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

71.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Shadow website, Twitter, Facebook, or Instagram accounts.

72.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

73.     Upon information and belief, Defendants have taken the foregoing actions with

the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

50. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

51. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

52. As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Shadow or agreed to appear in Shadow's advertisements.

53. Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

54. Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Shadow.

55. Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

56. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

57. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

58. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and

the goods and services provided by the Club.

59.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

60.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

61.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

62.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Shadow, or worked at, sponsored, or approved of Shadow's goods, services or commercial activities.

63.     This was done to promote and attract clientele to Shadow, and thereby generate revenue for the Defendants.

64.     Thus, this was done in furtherance of Defendants' commercial benefit.

65.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Shadow, nor worked at, sponsored, or approved of Shadow's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Shadow.

66.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

67.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

68.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Common Law Right of Privacy)

69.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

70.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

71.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

72.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Shadow's website or related social media accounts as part of Defendants' advertising campaign.

73.     At all relevant times, Shadow's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

74.     Shadow's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

75.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image

- 17 -

and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

76.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

77.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

78.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Shadow.

79.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

80.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

81.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

82.     Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

83.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

84.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

- 18 -

preceding paragraphs as if fully set forth hereon.

85.     Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B.*

86.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

87.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Shadow's website or related social media accounts as part of Defendants' advertising campaign.

88.     At all relevant times, Shadow's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

89.     Shadow's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

90.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

91.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

92.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or

promote a different product.

93.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Shadow.

94.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

95.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

96.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

97.     Defendants' actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

98.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of**
**Individual's Name, Portrait, or Picture)**

99.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

100.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

101.     Within Massachusetts, Defendants' used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their nightclub.

102.     No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants' to use her image for any advertising purposes, trade purposes,

or any commercial purposes, or any other purpose whatsoever.

103.    Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

104.    As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

105.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

106.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

107.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

108.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

109.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

110.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendants' willful and knowing misappropriation and publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Common Law Right of Publicity)**

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

114.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

115.    Defendants did so without any Plaintiff's consent, written or otherwise.

116.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

118.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

119.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

120.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

121.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are

entitled to punitive damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)**

122.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

123.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

124.     As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

125.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

126.    Defendants actions occurred primarily and substantially within Massachusetts.

127.    Defendants were at all times aware that no Plaintiff was employed at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

128.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

129.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

130.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys'

fees and costs, as provided for under this statute.

131.    In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

132.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

133.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

134.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

135.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

136.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

137.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual

property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

138.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

139.     Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

140.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Conversion)

154.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

158.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs worked at the Clubs, or endorsed the Clubs.

161.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing

in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

PLAINTIFFS,

By their Attorneys,

/s/ Paul Sullivan

Paul V. Sullivan, BBO# 634466
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@swdlawfirm.com

*and*


John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*

Dated:  July 1, 2019